UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL AMOS GEZON,

     Plaintiff,

v.

DORMAKABA USA, INC.,

     Defendant.

Case No. 25-

Hon.

_____

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____

## PLAINTIFF'S COMPLAINT & DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, PAUL AMOS GEZON, by and through his attorneys, THE MASTROMARCO FIRM, and hereby complains against Defendant, DORMAKABA USA, INC., stating as follows:

## COMMON ALLEGATIONS

1. That Plaintiff is a resident of the County of Kent, State of Michigan, and is otherwise domiciled in the State of Michigan.

2. That Defendant DORMAKABA USA, INC. (hereinafter "DORMAKABA" or "Defendant") is a foreign profit corporation headquartered in

the City of Indianapolis, State of Indiana, incorporated in the State of Delaware, and is otherwise domiciled outside the State of Michigan.

3.     That Defendant conducts business in the State of Michigan.

4.     That at all times material hereto, Plaintiff was employed by Defendant and performed his work remotely from the County of Kent, State of Michigan.

5.     That this Honorable Court has jurisdiction over Plaintiff's state law claims pursuant to diversity jurisdiction, 28 U.S.C. § 1332, in that the parties are citizens of different states.

6.     That the amount in controversy exceeds the sum of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), exclusive of costs, interest, and attorney fees.

7.     That venue is proper in the Western District of Michigan, Southern Division, in that Plaintiff resides and performed his work in the County of Kent, State of Michigan, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District, and that Defendant deliberately engaged in actions aimed at the form, and benefited directly from its purposeful availment to the forum such that this Honorable Court exercising jurisdiction over the defendant here would not offend the true notions of fair play and substantial justice.

8.      That DORMAKABA is a global security group engaged, among other things, in the manufacture and sale of small-to-large scale door security devices and building security systems.

9.      That Plaintiff began his employment with Defendant in or about October of 2017 as an "End User Consultant."

10.     That in or about 2022, Plaintiff was promoted to the position of Distribution Development Manager ("DDM"), a sales management position in which Plaintiff was compensated, in part, by commissions and sales incentive payments earned on the contracts and business he secured for Defendant.

11.     That at all times material hereto, Plaintiff performed his job duties in a satisfactory and/or an above-satisfactory manner.

12.     That as a Distribution Development Manager, Plaintiff was responsible for the entirety of the Lower Peninsula of the State of Michigan as his sales territory.

13.     That Plaintiff was a consistently top performing for the work in question.

14.     That at all times material hereto, the terms and conditions of Plaintiff's commission and sales incentive compensation were governed by Defendant's written Sales Incentive Plan, which included a Summary Plan Document and Standard Terms and Conditions applicable to Plaintiff's position(s) (hereinafter the "Sales Incentive Plan").

15.     That under the Sales Incentive Plan, Plaintiff was entitled to an annual target incentive calculated as a percentage of his base salary, earned and measured upon his sales performance, and paid on a periodic basis.

16.     That the Sales Incentive Plan provides that the amount of a participant's commission and sales incentive compensation is a direct function of the sales the participant procures and secures within the participant's assigned territory.

17.     That during 2024, Plaintiff discovered that another sales representative of Defendant, namely Jon Spargo, who was located in Chicago, Illinois, and who held no sales territory within the State of Michigan, was engaging in conduct that Plaintiff suspected to be fraudulent.

18.     That specifically, Plaintiff discovered that Jon Spargo was quoting and selling Defendant's products within the State of Michigan, and creating or causing the use of false and fictitious locations and addresses, so as to cause the product to be shipped to and credited through Chicago, Illinois, thereby evading Defendant's zip-code and territory reporting and poaching the sales territory of Plaintiff and other sales representatives.

19.     That Plaintiff reported the suspected fraudulent conduct to Defendant's management and, eventually, to Defendant's corporate counsel.

20.     That Plaintiff first reported the suspected fraudulent conduct to his then-Manager.

21.    That on or about January 1, 2025, and after Plaintiff reported the suspected fraudulent conduct, Plaintiff was "reassigned" and demoted from the position of Distribution Development Manager back to the position of End User Consultant, while Jon Spargo was not demoted or otherwise disciplined.

22.    That in connection with said reassignment, Defendant split the State of Michigan's Lower Peninsula into an Eastern Michigan territory and a Western Michigan territory.

23.    That whereas Plaintiff previously held the entirety of the Lower Peninsula as his sales territory, Plaintiff was given only the Western Michigan territory, which accounts for approximately thirty percent (30%) of Defendant's business within the Lower Peninsula.

24.    That the reassignment of Plaintiff to the Western Michigan territory drastically reduced Plaintiff's sales territory, his ability to procure sales and contracts, and the commissions and sales incentive compensation he was able to earn, and therefore operated as a demotion.

25.    That the reassignment and demotion came as a surprise to Plaintiff, as he was a top performer who, at all times material hereto, performed his job duties in a satisfactory and/or an above-satisfactory manner.

26.　That David Rich was, at the relevant time, Plaintiff's supervisor, and subjected Plaintiff to heightened and disparate requirements not imposed upon Plaintiff's similarly situated colleagues.

27.　That the justifications offered by Defendant for the reassignment and demotion of Plaintiff are pretextual in nature.

28.　That any justification proffered by Defendant for the reassignment and demotion of Plaintiff is either not based in fact, did not actually motivate the decision, and/or was too insignificant to warrant the action taken.

29.　That prior to his demotion, Plaintiff had procured and developed in excess of FOUR MILLION DOLLARS ($4,000,000.00) of business for Defendant in his pipeline for the upcoming calendar year.

30.　That among the opportunities and contracts Plaintiff procured and developed for Defendant was the University of Michigan rekey project (Opportunity No. OP000854193), valued at approximately ONE MILLION TWO HUNDRED TWENTY THOUSAND FOUR HUNDRED DOLLARS ($1,220,400.01).

31.　That Plaintiff was the procuring cause of the University of Michigan rekey project, having personally identified, developed, solicited, negotiated, and secured the same on behalf of Defendant.

32.　That additional opportunities and contracts that Plaintiff procured and developed for Defendant, and which were stripped from Plaintiff's territory in

connection with the reassignment and demotion, include but are not limited to the JW Marriott Water Square project (valued at approximately $823,059.50), the Blue Oval Battery project (valued at approximately $669,639.22), and a portfolio of hospitality and senior-living projects originated through Plaintiff's longstanding relationship with Bowers & Associates (valued, in the aggregate, in excess of $2,000,000.00).

33.    That under the express terms, implied terms, and/or the parties' course of dealing, Plaintiff's commissions and sales incentive compensation on the opportunities and contracts he procured were earned upon his procurement of the sales.

34.    That on information and belief, Defendant's written Sales Incentive Plan is silent as to a sales representative's entitlement to commissions and sales incentive compensation on sales procured by the representative where, as here, the representative is involuntarily reassigned, demoted, or separated without cause.

35.    That Defendant's own Sales Incentive Plan provides that participants who are involuntarily terminated without cause are eligible for prorated sales incentive payments up to their last day of employment, and that participants who are given revised quotas due to territory, regional, or area realignments retain all sales incentive payments earned through the effective date of the change.

36. That Plaintiff was not involuntarily terminated for poor performance, the violation of work rules, or any type of misconduct, and during Plaintiff nearly eight years of employment with defendant he received no complaints or indications of performance issues.

37. That on or about September 8, 2025, Defendant terminated Plaintiff's employment.

38. That Plaintiff's employment was terminated by Brett Holbrook, Defendant's Senior Vice President of Commercial and Multifamily.

39. That Defendant has failed and refused to pay Plaintiff the commissions and sales incentive compensation he earned on the opportunities and contracts he procured for Defendant, including but not limited to the University of Michigan rekey project.

40. That Defendant received the value of the contracts and opportunities Plaintiff procured at Plaintiff's expense, in that Plaintiff was not compensated for his procurement of said contracts and opportunities.

41. That the commissions and sales incentive compensation of which Plaintiff has been deprived can be calculated to a reasonable certainty based upon the express and/or implied contract between Plaintiff and Defendant.

42. That as a result of Defendant's conduct, Plaintiff believes he has lost commissions and sales incentive compensation in an amount of at least ONE

HUNDRED AND FOURTEEN THOUSAND DOLLARS ($114,000.00), and that evidence supporting that will come to light through the course of discovery.

WHEREFORE Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

<u>**COUNT I – BREACH OF CONTRACT**</u>

43.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of his Common Allegations, word for word and paragraph for paragraph, as if fully restated herein.

44.    That at all times material hereto, an employment and compensation agreement existed between Plaintiff and Defendant, the material terms of which provided that Plaintiff would be compensated, in part, through commissions and sales incentive payments earned on the contracts and business he procured on behalf of Defendant.

45.    That said agreement was partly written, partly oral, and partly implied through the parties' course of dealing, including but not limited to Defendant's written Sales Incentive Plan.

46.    That all of the aforementioned promises constitute a binding contract between the parties.

47.    That Plaintiff fully performed his obligations under the contract by, among other things, identifying, developing, soliciting, negotiating, and procuring contracts and opportunities for Defendant, including but not limited to the University of Michigan rekey project.

48.    That under the express terms, implied terms, and/or the parties' course of dealing, Plaintiff's commissions and sales incentive compensation were earned upon his procurement of the sales and were not contingent upon Plaintiff's continued employment with Defendant at the time of payout.

49.    That under the law applicable to the contract, a sales representative who is the procuring cause of a sale is entitled to recover the commission upon the sale, whether or not the representative personally concluded or completed the sale, provided the representative's efforts were the procuring cause of the sale.

50.    That Plaintiff was the procuring cause of the contracts and opportunities he secured for Defendant, including but not limited to the University of Michigan rekey project.

51.    That Defendant breached the contract by, among other things: (a) reassigning and demoting Plaintiff in retaliation for his reports of suspected fraudulent conduct, thereby stripping Plaintiff of his territory and his ability to receive earned and prospective commissions and sales incentive compensation; (b) failing and refusing to pay Plaintiff the commissions and sales incentive

compensation he earned on the contracts and opportunities he procured for Defendant; and (c) manufacturing pretextual employment actions for the purpose of avoiding the payment of commissions and sales incentive compensation due and owing to Plaintiff.

52.    That Defendant's conduct further breached the implied covenant of good faith and fair dealing inherent in the parties' contract, in that Defendant manufactured a pretextual basis to reassign, demote, and ultimately terminate Plaintiff for the purpose of depriving him of compensation he had earned and would imminently earn.

53.    That as a direct and proximate result of Defendant's breach, Plaintiff has suffered and continues to suffer severe economic damages and consequential damages, including but not limited to unpaid commissions and sales incentive compensation, lost future commissions and sales incentive compensation, and other compensation lost to Plaintiff, which were within the reasonable contemplation of the parties when they entered into the contract and/or were the natural consequences of Defendant's actions.

54.    That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable under statute and/or common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND

DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT II – UNJUST ENRICHMENT

55.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of his Common Allegations and paragraphs 43 through 54 of Count I, word for word and paragraph for paragraph, as if fully restated herein.

56.    That this Count is pleaded in the alternative to Count I, in the event it is determined that no enforceable express contract governs the commissions and sales incentive compensation at issue.

57.    That through his labor, skill, industry contacts, and relationship development, Plaintiff conferred a measurable benefit upon Defendant, including but not limited to the procurement of the University of Michigan rekey project and the development of an additional pipeline of business in excess of FOUR MILLION DOLLARS ($4,000,000.00).

58.    That Defendant had knowledge of, and voluntarily accepted and retained, the benefit conferred by Plaintiff, including the revenues, profits, and customer relationships generated by the contracts and opportunities Plaintiff procured.

59.    That the circumstances render Defendant's retention of the benefit inequitable unless Defendant pays to Plaintiff the value of the benefit, in that Plaintiff performed the procurement labor with the reasonable expectation, known to Defendant, that he would be paid commissions and sales incentive compensation, and Defendant reassigned, demoted, and terminated Plaintiff after he performed the procurement labor but before the compensation was paid.

60.    That Defendant has been unjustly enriched at the expense of Plaintiff.

61.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer severe economic damages and consequential damages in an amount equal to the reasonable value of the procurement services Plaintiff rendered, which damages can be calculated to a reasonable certainty.

62.    That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable under statute and/or common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

## COUNT III – QUANTUM MERUIT

63.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of his Common Allegations, paragraphs 43 through 54 of Count I, and paragraphs 55 through 62 of Count II, word for word and paragraph for paragraph, as if fully restated herein.

64.    That this Count is pleaded in the alternative to Counts I and II.

65.    That Plaintiff rendered valuable services to Defendant, including but not limited to the identification, development, solicitation, negotiation, and procurement of contracts and opportunities for Defendant, including the University of Michigan rekey project, and the development of a pipeline of business in excess of FOUR MILLION DOLLARS ($4,000,000.00).

66.    That said services were rendered at Defendant's request and/or with Defendant's knowledge and acquiescence.

67.    That Defendant accepted and used the benefits of Plaintiff's services, including by entering into the contracts Plaintiff procured and collecting the revenues, profits, and customer relationships generated thereby.

68.    That said services were rendered under circumstances which reasonably notified Defendant that Plaintiff expected to be paid for them, namely the parties' employment relationship structured around base salary plus commissions and sales incentive compensation on procured business.

69.    That the reasonable value of Plaintiff's procurement services is measurable by reference to the commission and sales incentive structure under which Plaintiff was compensated for the business he procured during his employment with Defendant, and is calculable to a reasonable certainty.

70.    That Defendant has failed and refused to pay Plaintiff the reasonable value of the services Plaintiff rendered, despite demand.

71.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer severe economic damages and consequential damages in the reasonable value of the procurement services he rendered.

72.    That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable under statute and/or common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with any and all legal and/or equitable relief this Court deems just.

### COUNT IV – PROMISSORY ESTOPPEL

73.    That Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 42 of his Common Allegations, paragraphs 43 through 54 of Count I, paragraphs 55 through 62 of Count II, and paragraphs 63

through 72 of Count III, word for word and paragraph for paragraph, as if fully restated herein.

74.     That this Count is pleaded in the alternative to Counts I, II, and III, in the event it is determined that no enforceable express contract governs the commissions and sales incentive compensation at issue, or that any such contract is illusory, ambiguous, or unilaterally modifiable.

75.     That Defendant, through its written Sales Incentive Plan, its compensation policies, the parties' course of dealing, and its representations to Plaintiff, made a clear and definite promise that Plaintiff would be compensated through commissions and sales incentive payments on the contracts and business he procured on Defendant's behalf.

76.     That Defendant made said promise with the reasonable expectation that it would induce Plaintiff to rely upon it by devoting his labor, skill, time, industry contacts, and relationship-building efforts toward procuring contracts and business for Defendant.

77.     That Plaintiff did, in fact, reasonably and foreseeably rely upon Defendant's promise by, among other things, devoting substantial labor, time, skill, and personal industry contacts to procuring contracts and opportunities for Defendant, including the University of Michigan rekey project, developing a pipeline of in excess of FOUR MILLION DOLLARS ($4,000,000.00) of additional

business for Defendant, and forgoing other employment, business, and commission opportunities he could have pursued elsewhere.

78.    That Plaintiff's reliance upon Defendant's promise was to his substantial detriment, in that Plaintiff performed the procurement labor and forwent alternative opportunities, but was deprived of the promised commissions and sales incentive compensation through Defendant's pretextual reassignment, demotion, and termination, and its refusal to pay.

79.    That Plaintiff's reliance upon Defendant's promise occurred under circumstances such that the promise must be enforced to avoid injustice.

80.    That Defendant should be estopped from denying its promise to pay Plaintiff the commissions and sales incentive compensation he earned on the contracts and opportunities he procured.

81.    That as a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered and continues to suffer severe economic damages and consequential damages, which were within the reasonable contemplation of the parties and/or were the natural consequences of Defendant's actions.

82.    That Plaintiff hereby claims any and all costs, interest, and attorney fees allowable under statute and/or common law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in his favor in an amount in excess of SEVENTY-FIVE THOUSAND

DOLLARS ($75,000.00) in addition to costs, interest, and attorney fees along with

any and all legal and/or equitable relief this Court deems just.

 

                                                  Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 14, 2026,                    By:    /s/ Victor J. Mastromarco III.
VICTOR MASTROMARCO III (P86871)
VICTOR MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL AMOS GEZON,
     Plaintiff,

v.

DORMAKABA USA, INC.,
     Defendant.

Case No. 25-
Hon.

_____

THE MASTROMARCO FIRM
VICTOR J. MASTROMARCO, JR. (P34564)
KEVIN J. KELLY (P74546)
Attorneys for Plaintiff
1024 N. Michigan Avenue
Saginaw, Michigan 48602
(989) 752-1414
vmastromarco@mastromarcofirm.com
kkelly@mastromarcofirm.com

_____

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, PAUL AMOS GEZON, by and through his attorneys, THE MASTROMARCO FIRM, and hereby demands a trial by jury on all of the above issues, unless otherwise expressly waived.

Respectfully submitted,
THE MASTROMARCO FIRM

Dated: July 14, 2026,                    By:    /s/ Victor J. Mastromarco III.
                                         VICTOR MASTROMARCO III (P86871)
                                         VICTOR MASTROMARCO, JR. (P34564)
                                         KEVIN J. KELLY (P74546)
                                         Attorneys for Plaintiff
                                         1024 N. Michigan Avenue
                                         Saginaw, Michigan 48602
                                         (989) 752-1414